Good morning, Your Honors, and may it please the Court. My name is Mark Ebert, and I represent Mr. Jackson. First, I'd like to point out where the Court can find the resolution to a factual issue that occurs in the briefs. I refer in my opening brief on the propensity evidence issue to the 18-year-old prior alleged attempted rape that was offered as propensity evidence in this case. The government refers to the quote, prior 1984 conviction for sexual assault, end quote, in its brief. If you look at the pre-sentence report at C.T. 229, and at the government's motion in limine to admit that evidence at C.T. 103-104, you'll find that Mr. Jackson was not convicted of a sexual offense in 1984. He was charged with that. He ultimately pled guilty to assault with a deadly weapon, which is neither a sexual crime nor a propensity crime, even under California law. I think your stronger argument, I'm speaking just for myself, is on the Batson issue. Okay. So if you could spend a little time on that, that would help me tremendously in resolving this case. Absolutely, Your Honor. On the Batson issue, I've shown four reasons why the striking of the two African-American jurors was done on the basis of race, and that the reasons given by the prosecutor were pretextual. Number one, statistical reasons. Number two, disparate questioning of African-American and non-African-American jurors. Number three, disparate decisions on whether to excuse African-American and non-African-American jurors. Also called comparative juror analysis. And fourth, the lack of any objective reasons for striking the two African-Americans from the jury. The State makes basically three arguments in return. First, that the trial judge should not be second-guessed on his determination that race-neutral reasons were offered by the prosecutor. But if the Court accepts that argument, that would effectively eliminate any appeals of Batson claims or any use of the tools such as comparative juror analysis that the Supreme Court told us should be used in these cases, but that the trial court did not perform. And that's the problem for me, is it's really difficult to determine whether or not the prosecutor's reasons should be given credence without a comparative evaluation of the jurors that were selected as opposed to those that were not. I agree with that, Your Honor. And I don't know that it's relevant, but I was the attorney in Boyd v. Newland for the appellate in which this Court decided that, yes, the Supreme Court does require comparative juror analysis and that it should be used in these cases. I agree with that wholeheartedly. And I think that's the law both of the Supreme Court in Miller L. II and Johnson v. California and by this Court in Boyd v. Newland. And I think that the comparative juror analysis really does show that there was disparate treatment of similarly situated African-American and non-African-American jurors. Second, the State argues that the struck and the non-struck jurors were not exactly the same, but no two jurors are ever going to be exactly the same. The point is that the jurors that I compared, the struck African-American jurors and the non-struck non-African-American jurors, were the same as the reasons given by the prosecutor for striking them. I had a question about the female juror who was preempted. Was the reason given that she was educated or was it the focus on the fact she was educated as a social worker? That she was educated as a social worker. The prosecutor said she didn't like social workers. Well, one could understand sort of why a prosecutor would think that a social worker might be just a little too compassionate in terms of judging the defendant. So why wouldn't that be a race-neutral reason? Well, I'm not saying that it's not race-neutral reason standing by itself. I'm saying that the record, the comparative juror analysis, the statistical analysis and so on shows that it was pretextual. Well, why would that be pretextual when compared with the other jurors who received it? Was there another social worker or someone in a field, educating in a field that emphasizes compassion? I think the best clue, in addition to, again, the statistical fact that either two-thirds or all, depending on how you read the record, of the African-Americans were struck by the prosecutor, is the disparate questioning. There were a number of jurors where the state was very concerned about their education and their training and their background. And in each of those cases, the prosecutor conducted a serious voir dire of those people. And most of those people were left on. And the one that I think is most telling is the juror that the prosecutor felt would have prior education in the area of DNA analysis. Because the fight, the biggest fight in this case, if you look at the defense closing argument, for example, was over the DNA evidence. There was extensive disputes over all aspects, technical, software, the test, and so on, of the DNA evidence. And yet the prosecutor conducted voir dire of that juror, that other non-African-American juror, and let him stand. So I think that when you add up these four, well, plus the fact that this social, this formerly educated social worker did say that she was no longer in social work and that her experience was long ago and she could be fair and impartial in this case. So I don't think there's any objective reason to keep her, this particular juror, off. Was there a third African-American left on the jury or not? That's really unclear from the record, Your Honor. There is a reference to a juror whose name is redacted, which is what court reporters usually do with jurors who sit. But that's the only evidence. And furthermore, that reference came before the final jury was picked. In other words, there was at least one. I don't remember how many peremptory challenges after that. So my view is that there's no sufficient evidence as to whether or not there was a third juror. But even if there was, again, we have the striking of two out of three, which is statistically very significant. Was there any social worker left on the panel? Not that I'm aware of. But there were people with all kinds of educational backgrounds, including, most importantly, the DNA one, that the prosecutor was very concerned about and did conduct the review on. I'm not sure I understand your position with respect to comparative juror analysis. With respect to the non-social worker, I thought there was a comparative juror analysis. Not by the trial court. There was by the state court. Yes, Your Honor. The court of appeals basically just said that these people are different. I'm saying that from the point of view of the reason that the prosecutor gave for striking them, I guess, prospective juror. They were not different. And, again, the objective reason and the statistical reason. But she's talking about the male. We're talking about the male that was stricken, the one who had the negative experiences with law enforcement. Oh, of course. Well, the other, for example, there was another juror who also felt discriminated against by the police, not on the basis of race, but on the basis of being a Californian, and who had had not one but two negative experiences with the police. And she was left out. She was not. Were the similarities called that you are noting here, were they called to the attention of the trial court in any way? No. That's where I'm having a little trouble. Yeah, that's what I'm trying to think, Your Honor. I know that the trial court did not do a comparative juror analysis. Procedurally, how did that go? As I stand here, I don't recall what the defense attorney said on that. I'm sorry, Your Honor. That's what I was asking. Procedurally, how did this go? There was a challenge. There was a challenge. And the judge impliedly, as the court of appeals found, State Court of Appeal, impliedly found that there was a prima facie case. What did the judge say? Did he say, prosecutor, there's been a challenge made, tell me why you struck these two jurors? Correct. And you don't get to that stage unless a prima facie case has been made out. Right. And the court of appeal assumed it, and the district court assumed it. Right. And so then the prosecutor said, I struck one because she was a social worker. Right. And I struck the other because I was afraid that his negative experience with law enforcement would lead him not to be an objective. Correct. And the trial court said, okay. And the trial court said that they are, yeah, the trial court said those are nonracial reasons, and therefore. And that was the end of the matter. That was the end of it. That was it. That was it, as I recall. I'd love to save some time for rebuttal. Okay. We'll give you a minute. That's okay. It's April the 15th. The government will be generous. The government give it, and the government take it. Thank you. Good morning. Excuse me. May it please the court. Justin Riley on behalf of the warden. I, too, will focus my argument on the Batson challenge. Basically, what the appellant seems to be arguing is that in comparison to the other jurors who were not struck, the two jurors, Juror S and Juror J, the preemptory challenges by the prosecutor were pretextual. I looked at the disparate questioning argument in Appellant's brief. Frankly, I didn't understand it. I didn't see the disparate questioning. It's kind of like comparing two jurors. Every juror is different. So a comparison of the two jurors obviously will show differences. But that's what Batson requires us to do is to try to look, compare the jurors that are challenged and those who sit to see if we can discern a pattern of, you know, pretext. Absolutely, and I agree. My point here, though, is that because all jurors are going to be different, all the questions to those jurors are going to be different. You can't just look at the questions asked to each individual juror and say, oh, those are different questions. Just like you can't look at each individual juror and say, oh, there's a slight difference, therefore, we must draw a conclusion. But if you have two jurors who have expressed that they had negative experiences with law enforcement, both of them say they can put it aside, and one is preempted and the other is not, what's the race-neutral basis for the preemption? Because I agree with comparative analysis so much, let's bring another juror into that mix. There is a juror, juror C. Well, first answer my question, and then you can discuss the other juror. Okay. But tell me why there is a race-neutral basis. The race-neutral basis was a matter of degree, and that's where juror C. comes in, and I know you want to hear this question first, so I'll try and answer it without juror C. It was a matter of degree. The struck juror had a little bit more of a negative experience with law enforcement that had a bearing on this particular case. Because of his race, right? Because of his race? Well, he said that he had an experience with law enforcement, and law enforcement acted in a racially motivated way. Not necessarily. But if he said he could put that aside and judge the case fairly, why would he be preempted if it's not race-based at that point? And if I may, I'd like to bring juror C. into the mix now. Juror C. said exactly the same thing. Juror C. said law enforcement assaulted me. They harassed me. I'm now suing them, but I can put that aside. And I imagine because the prosecutor was not asked specifically as to juror C. why he struck juror C., he didn't want to roll the dice. Somebody who's in a lawsuit with law enforcement is in a little different position than someone who 16 years ago was stopped by the police and said they could put that aside. Over the course of 14 years, I agree with you. Like I say, it was a matter of degree. I agree with you. The person who was assaulted and is suing the law enforcement, he needs to be kicked off the jury. He just can't be. Well, one could understand that that's a race neutral. And that person was not African American. Right. And as a matter of degree, juror S., who was struck for his experiences with law enforcement, he experienced and he witnessed law enforcement acting in a racially motivated way. Now, here in our case, we have an African American defendant and we have white law enforcement. And if this juror witnessed over the course of 14 years white law enforcement acting in racially motivated ways toward African American suspects, if I may use the term, or subjects of investigation, over the course of 14 years, it's going to be hard for him to set that aside. But that's a common occurrence for African Americans. And so are you saying that because African Americans have been, it's been documented that they are pulled over by the police more and maybe subjected to questioning more that African Americans per se would be biased if it's law enforcement, if there's an accusation that law enforcement engaged in racial profiling or things of that nature? That's what I'm hearing you come close to saying. Absolutely not. I'm not advocating for such a rule by any means. But I am saying that this particular juror, 14 years, it was all personal to him. He said it happened, it seemed from the record it happened quite often. And he actually used the term harassed. He said it was racially motivated. If you, if he were challenged for cause, if he were challenged for cause and a record was made that his experiences caused him to be biased toward police officers or Caucasian police officers or law enforcement generally, then that would be a little more persuasive to me. But to assume that even though he said he could be objective, that he wouldn't be and exercise a peremptory challenge when you didn't do it against a non-African American who felt harassed, is a little suspicious to me. If this juror would have been arguably amenable to a challenge for cause, all the more so for a peremptory challenge because that's what the prosecutor is there to do. The prosecutor is there to make sure that he, in this case, it was a man, chooses a jury that can be fair and impartial toward his case. Absolutely. If the juror says he can be fair and impartial, you have to have a reason other than race to kick him off. Well, just like in the case of Juror C, sometimes jurors are going to say, I can be fair and impartial, but the circumstances are going to lead the prosecutor to believe, you know what, I think because of the circumstances that this juror went through over the course of 14 years where he specifically said he was harassed, where it happened quite often, where he expressed a feeling of helplessness that he couldn't complain about this sort of harassment in his words, I think the prosecutor fairly looks at that and says, you know what, even though the juror, the prospective juror said I can be fair and impartial, I don't know what's going to happen when we get this case where there's an African-American defendant and white law enforcement and the testimony starts coming out and brings up all these feelings. I mean, it's just, like I say, all the more so. It's reasonable. Sounds like he's striking him because of his race. Yeah. Because of his observations having to do with law enforcement. Yeah, I'm not sure you're helping yourself there. Okay. The experience he had with law enforcement. You would have an easier case if the prosecutor hadn't struck two African-Americans. It comes closer to looking pretextual when two out of three, arguably, or two out of two are struck from the jury. It makes a more difficult argument for you to make when you strike two out of three African-Americans or two out of two African-Americans. It just makes it really difficult for you to argue that it's race neutral. And I would like to point out that it was two of three. Well, that's what the district court judge found. I mean, the record isn't really clear, so given the judge, I mean, we give deference to the judge's finding because he was there. It's still two out of three. The state court did find it as well. Two out of three. And then as to the social worker, as the panel already identified, there were no other social workers on the panel. There are about four cases cited in the state court of appeal opinion giving reasons and explaining why social workers are not desirable for prospective jurors. I'd love to answer any additional questions. I don't have any. I don't believe there are any. Thank you. Thank you, Your Honors. I'll be very brief. Three things. One, to answer the court's prior question, the entire record, I believe, on the Batson motion and the court's responses is found at ER 5254. And I won't repeat it, but it's all in those few pages. Secondly, as to struck juror Mr. Smith, the prosecutor argues that he had more bad experience than the other one who was not struck. But I note that that juror said that this harassment had occurred more than 20 years ago, that he now at this point socialized frequently with law enforcement officers, had both good friends and former students who were in law enforcement, and that he could and would be able to not allow the identity of the officers as witnesses to affect his ability to be fair and assess the credibility of witnesses on an individual basis. And third, the state refers to juror C as being similar to Mr. Smith. In fact, juror C actually assaulted a police officer, had filed a civil suit against that officer, and had three pending charges against him resulting from that incident at the time of the jury selection. So I don't think that that's comparable at all. Any other questions, Your Honors? Thank you. Thank you. The case just argued is submitted for decision.
judges: Collins, Schroeder, Rawlinson